## CHATHAM S. CONDOMINIUM ASSOCIATION v. CENTURY UTILITIES, Inc.

Docket No. 760900-WS (CP). Order No. 8060.

Florida Public Service Commission.

December 1, 1977.

Michael B. Small, West Palm Beach, for the complainant.

Sam Spector, Tallahassee, and Thomas E. Kingcade, Palm Beach, for the defendant.

Leon F. Olmstead, Tallahassee, for the commission staff and the public generally.

The following commissioners participated in the disposition of this matter — PAULA F. HAWKINS, Chairman, and Commissioners WILLIAM H. BEVIS and WILLIAM T. MAYO.

BY THE COMMISSION.

Pursuant to notice, the commission by its duly designated hearing examiner, John R. Marks, III, held a public hearing on this matter in West Palm Beach on May 26, 1977.

The examiner's recommendations were duly served, exceptions thereto were taken, and oral argument on the exceptions was heard on September 12, 1977. Now, having considered all of the evidence, we enter our order.

This is a controversy between Chatham S. Condominium Association (complainant, or association), a non-profit association of condominium owners, and Century Utilities, Inc. (defendant or utility). The complaint concerns the refusal of the defendant utility to provide water and sewer utility service to a central laundry facility.

It appears that sometime prior to March 19, 1976, the association, without making application to the utility, installed two coin operated clothes-washing machines, two coin operated clothes dryers and one electric water heater in a room located on the first floor of the condominium building commonly known as Chatham S. Apparently, water was initially obtained through an unmetered, outside hose bib and waste-water was run into an existing sewer line. It is not known how long the unmetered operation continued or if, in fact there was any service provided or used in this manner. Upon application by the association, a meter was eventually

installed and water and sewer operations were allowed following the payment of a residential deposit. Service was terminated two days later as the utility required a commercial (general service) deposit rather than the originally requested residential deposit. The additional deposit was paid and operations were restarted on May 13, 1976; but on May 15, 1976, the utility discontinued service again without notice or explanation. Subsequent repeated demands were refused until December 17, 1976, when a temporary injunction was entered by the circuit court and service was reinstated.

Based on the above summary of facts, the examiner concluded the controversy was one of form rather than substance, that the complainant failed to show the problem was within the commission's power to correct, and recommended the complaint be dismissed. We do not agree with the examiner either as to his conclusions or recommendation.

At the hearing, in addition to the foregoing facts, the utility asserted the sewer lines were not of sufficient slope to handle the laundry waste-water and that there was a danger of sewage backing up "into the residential units." (During oral argument, counsel referred the backup danger to "periods of heavy rains.") Inasmuch as the lines are supposed to be water-tight and thus avoid infiltration, the reference to "heavy rains" as a reason for the utility's action is without merit. It was also alleged that fatty deposits build up in the lines and will inhibit water flows. It appears that the heat of the water and the detergent from the laundry should reduce, rather than add, to problems due to fatty build-up in the sewer lines. The utility witness acknowledged the detergent could alleviate build-up problems (tr 234). A licensed plumbing contractor, familiar with and doing plumbing in the area, testified that the lines in the Chatham S. condominium were adequate to accommodate a washing machine in each of the 24 units without overloading lines. He also stated the increased water-flows through the lines would decrease chances of blockages (tr 71, 73), and warm water would help remove grease (tr 75).

The Deputy Palm Beach County Building Inspector charged with enforcement of building codes, testified the installation was acceptable. Also, the West Palm Beach City Chief Plumbing Inspector testified the installation would be acceptable and would be approved if it were in the city and inspected by him. He also stated that detergent laundry water would help keep the line clear (tr 81). Both witnesses use the "Standard Plumbing Code;" the city has an addendum thereto.

The utility also asserted the existence of the "PVC" lines through the electric meter-room constituted a hazardous condition and

justified their refusal of service until corrected. The lines in question are PVC, 4″ in diameter and are situated at the base of the wall, on the floor below the power panels and meter-boxes against the electrical conduit. The electric lines enter the building through the floor and run up the wall between the sewer line and the wall. Thus, the sewer line is at its farthest point within 18″ of the wall (4″ pipe is 16″ to center line thereof), and below the electrical panels and meters.

The chief plumbing inspector for the city of West Palm Beach also noted that lines close to the electrical boxes had to be non-conductive and that PVC is non-conductive.

The Deputy Palm Beach County Building Inspector also testified that the proper permits were obtained, the construction was inspected and that there is no adverse information in his file. He further stated that two inspections had been made, one in his presence, relative to violations of the electrical code and found there were none. The required clearances were provided in the meter-room. The inspection for violations of the electrical code was by a qualified electrical inspector, the chief building inspector.

Section 367.111, Florida Statutes (1975), provides —

> "(1) Each utility shall provide service to the territory described in its certificate within a reasonable time . . ."

Rule 25-10.74, Florida Administrative Code, outlines conditions under which a utility can terminate service to a customer. The company alleges the existence of a hazardous condition (the sewer line), and bases its refusal thereon. In view of the testimony herein of representatives of agencies charged with enforcement of laws relative to this subject, we must conclude the utility's position is without merit. No other provision of Chapter 25-10.74, Florida Administrative Code, has been cited as justifying refusal of service. On the basis of the record, we must conclude the complainant is entitled to water and sewer service and that refusal thereof is not justified.

The utility contends that the service must be commercial (general service as per tariff) rather than residential and required a $10 deposit on that basis.

The company tariffs provide for a deposit of $6 for 3/4″ or 5/8″ meters, $10 for a one inch meter for water service, and $10 or an amount equal to three months' charges for sewer service. The complainant has made a $6 deposit (Ex. 12) and a $10 deposit (Ex. 4), so has complied with the utility's tariff on this point, if, in fact, a

¾″ or ⅝″ meter is provided and all customers are charged both deposits. (The above reference to meter size is per company tariff and should be considered the same as what is now referred to as a ¾″ x ⅝″ meter.)

Service to the complainant will be on the general service schedules in the utility's tariff.

Both parties took exceptions to the examiner's recommendations.

The complainant attacked the examiner's recommendation in several areas, namely: responsibility for the lateral from the main to the building, discontinuance of service without notice, inability of service. We believe none of these points are meritorious and reject the exceptions.

In addition to resolution of the complaint, there are two other matters to be resolved.

The respondent filed a motion to dismiss the complaint and for continuance. These were renewed at the hearing. The examiner properly referred the motion to dismiss to the commission and we hereby specifically find it to be without merit. The examiner properly deferred ruling on the motion for continuance until the conclusion of the hearing. There was no showing the respondent was prejudiced in any way or unable to present its case. Accordingly, we must sustain the examiner's ruling denying the motion to continue the hearing.

Subsequent to the hearing, the complainant filed a motion to "strike all portions of the respondent's brief and the attached exhibits relating to allegations of a hazardous condition purportedly supported by an opinion from Florida Power and Light; and in addition thereto, severely reprimand and chastise counsel for the respondent for unilaterally, and without authority from the hearing examiner, the commission or by stipulation of counsel, forwarding exhibits and letters after the hearing has been closed and the evidence has been received." The brief and offending exhibit was filed by Mr. Shapiro.

. The matter of the letter from Florida Power and Light was alluded to in oral argument, and objection of complainant's counsel thereto was sustained.

Section 120.66, Florida Statutes (1976 Supp.) prohibits ex parte communications of the nature herein complained of and provides for a penalty for violation of the act. We do not believe the post-hearing letter, especially in view of the other evidence to the contrary, had sufficient impact to warrant more than granting the motion to strike the letter (Schedule "B" to respondent's brief,

which was served on July 8, 1977). We believe our actions herein sufficiently negate any impact of the actions of respondent's counsel. We would, however, and do hereby direct counsel's attention to the above cited statute, and recommend compliance therewith.

Finally, the objections by the respondent to alleged failure of the complainant to prefile testimony and exhibits as directed by the notice of hearing. It does not appear any derelictions in this regard precluded the respondent from conducting a vigorous and forceful cross-examination or presenting its case. Accordingly, the examiner's rulings relative thereto will be affirmed.

It is therefore ordered that Century Utilities, Inc., Post Office Box 15855, West Palm Beach, Florida 33406, be and is hereby directed to continue water and sewer service to the Chatham S. Condominium Association on the same terms and conditions, including security deposits, as are approved in its tariff.

It is further ordered — (1) The motion by respondent to dismiss the complaint is denied; (2) The examiner's findings and conclusions are rejected as contrary to the law and the facts; (3) The examiner's rulings on the motion to continue the hearing, and on the objection to complainant's witnesses, are affirmed; (4) Schedule "B" to respondent's brief is hereby ordered stricken.